UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELE R. JACOBE,                    :    **CIVIL NO.  4:06-CV-0577**
                                      :
              Plaintiff               :    (Judge Jones)
                                      :
         v.                           :    (Magistrate Judge Smyser)
                                      :
MICHAEL J. ASTRUE[1],                 :
Commissioner of Social                :
Security,                             :
                                      :
              Defendant               :


## REPORT AND RECOMMENDATION


The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.


The plaintiff's insured eligibility ended on December 31, 1989.

---

1.  Michael J. Astrue became the Commissioner of Social Security, effective February 12, 2007, to succeed Linda S. McMahon. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

On July 30, 1996, the plaintiff, Michele R. Jacobe, applied for disability insurance benefits.  She claimed that she became disabled on September 2, 1987, as the result of lumbar radicular pain, history of lumbar laminectomy and fusion, depression, post traumatic stress disorder and anxiety and irritable bowel syndrome.  The claim was denied initially and on reconsideration.  The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on February 10, 1998.  Tr. 32-52.  The claim was denied in a June 2, 1998 ALJ Decision.  Tr. 106-112.  The Appeals Council remanded.  Tr. 118-121.  A second hearing was held, on July 12, 2000.  Tr. 53-64.  A second Decision denying the claim was issued on September 23, 2000.  Upon appeal to this court, the case was remanded at the parties' request to the Commissioner and a third hearing was held.  Tr. 390-454. At this hearing the plaintiff, two medical experts and a vocational witness testified.

The testimony of Ms. Jacobe was truncated, with intervening testimony from medical experts.  First, Ms. Jacobe stated that she had major back surgeries in 1980 and 1987.  She

2

last worked in 1984.  She had stopped working then to stay home with her young step-daughters.

Dr. Askin, a board certified orthopedic surgeon, not a treating physician, testifying as a medical expert, stated that the plaintiff's 1980 disc fusion surgery and her 1987 disc fusion surgery did not yield impinged nerves as a prominent aspect of Ms. Jacobe's presentation.  Dr. Askin stated that her condition did not meet or equal the criteria of a listed impairment, but that she would have been incapacitated or in post-surgical recuperation for from six months up to as much as one year.  Dr. Askin stated that her condition after recuperation was such that working at a light exertional level or a medium exertional level would not have harmed her, but was such that her pain ("sore back") may have prevented her from working.  Tr. 402-403.  He stated that a 1990 MRI test reveals some nerve abnormalities in her back that may explain her back pain but not necessarily her leg pain.  Tr. 406.  The MRI showed damage to a nerve root exiting L-5, S-1.  Dr. Askin, who testified by telephone, could not be clearly heard by the court reporter in many of his responses and, also, he was not

3

responsive to questions asked on cross-examination.  Tr. 406-411.

After Dr. Askin's testimony, Ms. Jacobe was questioned about her second (1987) fusion surgery, and she explained that she had slipped in a ShopRite store and had caused a further injury to her back.  She had the second fusion surgery for that reason.

She also related that she had been depressed after her second husband's death in 1996.  She takes an anti-depressant, Zoloft.  She had been depressed throughout her life, prior to 1996, back to her childhood.  Zoloft, which she had been taking now since 1998, has stabilized her depression.

The psychologist, Dr. Galdieri, also called as a non-treating expert witness, stated that there is no record of mental health treatment of the plaintiff prior to December 31, 1989.  The doctor found records of episodes of depression after 1990.  The doctor found nothing in the record upon which he felt comfortable basing an opinion as to whether her condition

4

did or did not meet or equal the criteria of a listed impairment prior to December 31, 1989.  Tr. 424.  Looking at the records after that date, Dr. Galdieri found that there has been a period of time during which her mental condition in combination with her physical condition would have met or equaled the criteria of one or more of the Commissioner's listed inherently disabling impairments.  Tr. 426.  During examination by the plaintiff's attorney Dr. Galdieri acknowledged record evidence linking the plaintiff's mental health condition back to her September 7, 1987 injury.  Tr. 427-429.

In further examination of the plaintiff, Ms. Jacobe, she stated that she had stopped working after her first surgery because she and her second husband were financially secure and because she wanted to care for her two step-children when they were with their father (her second husband) and step-mother. She described how she felt after her second surgery.  She stated that she experienced terrible pain.  Minor chores caused her enduring pain.  She stopped driving a car for five or six years.

Currently, she sits a lot.  Anything that she does she does for a short period of time.  She leaves the house only for doctors appointments.  Her condition has not gotten better over the years, in her feeling about it, except that there are lesser fluctuations in her depression.

She testified that, contrary to Dr. Askin's opinion, she could not stand, sit and walk during the course of an eight hour day.  She stated that in 1990 she had a third surgical procedure.  She stated that she has had constant back pain over the years, going back to her first surgery.  She is still getting treatment for her back condition.  Even though she stopped working in 1989 and had a second surgery in 1987, she did not apply for disability benefits until 1996 because she had not felt that she needed the money until her second husband died, at which point she felt that she had no choice other than to apply.  Her current medications for pain are morphine, oxycontin, celebrex and muscle relaxers.  She feels that she could not sit and concentrate to do a job.  She takes her medications every day.

6

A vocational witness, G. Starosta, stated that if a person, age thirty-four[2], had the residual functional capacity to perform light work and to understand, remember and carry out instructions and to make simple work-related decisions, relate appropriately to co-workers, supervisors, to the public, to the work setting and to typical changes in the work setting, that person could perform many unskilled jobs involving simple repetitive work activity.  Tr. 445-447.  There would be jobs that could be performed even if the physical exertion requirements were significantly reduced, standing and sitting flexibility were increased and standing or walking requirements were reduced.  Tr. 447-448.  If the hypothetical person were a person meeting the description of Ms. Jacobe as she describes herself, there would be no jobs that the hypothetical person could perform.  Tr. 448-449.

On March 14, 2003, the ALJ issued his decision denying the plaintiff benefits.  Tr. 375-384.  The Appeals Council

---

2.  The claimant was thirty-four years old on December 31, 1989 when her eligibility status expired.

7

denied the plaintiff's request for review (Tr. 366), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed her complaint with this court on March 20, 2006.  The defendant filed an answer to the complaint and a copy of the administrative record on August 10, 2006. Pursuant to Local Rules 83.40.4 and 83.40.5, and this Court's Order of January 18, 2007 the plaintiff filed her brief on January 4, 2007 and the defendant filed his brief on February 2, 2007.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

8

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. In determining if the Commissioner's decision is supported by

substantial evidence the court must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education,

and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged September 2, 1987 onset date, that she has impairments that are severe ("dysthymia and episodes of major depression, low back pain syndrome and status post laminectomy in 1980 with fusion for spondylolisthesis, and a partial L4 laminectomy with medial facetectomy for nerve root decompression and bilateral L4-5 bone bank lateral fusion on October 6, 1987") (Tr. 382), that her impairments do not meet or equal any listed impairments, and that she is not able to perform her past relevant work. The ALJ further determined that the plaintiff's medical impairments did not prevent her from performing a variety of entry level unskilled jobs which existed in significant numbers in the regional and national economies as of the alleged onset date of disability.

On the basis of these findings, the ALJ found the plaintiff not to be disabled.  In the analysis, the focus of

11

the ALJ was upon the issue whether the plaintiff had a
disability before the December 31, 1989 expiration of her
insured eligibility.  The analysis of the ALJ, however, does
not specify exactly how the eligibility cut off date was being
factored in to the analysis.  This will be discussed further
below.  The Commissioner does not appear to dispute that the
plaintiff who testified at the hearings held to consider this
claim is presently disabled, although that issue is not
directly addressed.

        The plaintiff argues, first, that substantial evidence
does not support the finding of the ALJ that the plaintiff's
combination of impairments in 1989 did not meet or equal the
impairments described in Section 1.04 of Appendix No. 1.

        The second argument of the plaintiff is that
substantial evidence does not support the ALJ's finding that
she was not disabled during the period before the expiration of
her eligibility by her orthopedic condition and related pain
because that finding is based upon the ALJ's rejection of the

plaintiff's credibility and because the rejection of her

credibility is not supported by reasons or explanation.


     The person that was found by the ALJ in this case to

have the residual functional capacity[3] to perform substantial

gainful activity is described in the Decision at ¶ 8, Tr. 383

in the same terms as one of the hypothetical persons described

by the ALJ in one of the hypothetical questions to the

vocational witness.  The ALJ, in adopting one of the

alternative hypothetical persons over the others, rejected the

position that the plaintiff had an impairment that was

substantially equivalent to a listed impairment.  The ALJ found

that "[t]he claimant's medical impairments did not prevent her

from performing a variety of entry level jobs which existed in

significant numbers in the regional and national economies as

of the alleged onset date of disability."  Tr. 383.  This

finding and the foregoing discussion of the ALJ also rejects as

a component of the plaintiff's "medical impairments" her pain,

---

3.  "Residual Functional Capacity" is "that which an individual is still able
to do despite the limitations caused by his or her impairment(s)."  *Burnett v.
Commissioner of Social Security Adm.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting
*Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

depression and guardedness against activity as she had
described them.

However, Dr. Galdieri did not provide a basis in his
testimony for a finding that Ms. Jacobe did not have the
equivalent of a listing level mental impairment prior to the
end of 1989.  Dr. Askin did not provide a basis in his
testimony for a finding that she did not have a disabling set
of orthopedic problems at any time prior to the end of 1989.
The ALJ wrote that Drs. Askin and Galdieri had testified that
she did not have a combination of impairments of listing level
severity prior to the end of 1989, and that her medical
impairments did not prevent her from performing substantial
gainful activity at any time though December 31, 1989.  Tr.
381.  But, Dr. Askin had stated that there was an equivalency
to 1.04 in 1987, for a period of six months up to a year.  Tr.
401.  Dr. Askin also was careful to note in his testimony a
difference between limitations upon physical functions that are
medically advisable to prevent aggravation of an injury and to
prevent further injury and those that occur as the result of a
person's pain and subjective reticence to be active even though

14

activity would be medically advisable.  (Dr. Askin

distinguished between a "weak back" and a "sore back".)  Dr.

Askin also affirmed that depression can cause a person to

subjectively exaggerate the degree of pain from an orthopedic

problem.  The ALJ appears to have considered the "weak back"

component of Dr. Askin's testimony, but not the "sore back"

component, but under the statute and case decisions the

subjective symptoms can not be ignored.

Dr. Askin's testimony, which was not unfavorable to the

plaintiff's claim of a condition that was disabling prior to

1990, is that she had a listings equivalent impairment for up

to a year and, with the inclusion of pain and subjective

symptoms, may have been unable even beyond that to perform

substantial gainful activity even though from an objective

medically therapeutic perspective she could and should have

performed substantial gainful activity.

Dr. Galdieri confirmed the existence of a listings

level mental impairment for at least a period of time after

1989 and could not rule out the existence of such a level of

impairment prior to the end of 1989.  This is not consistent

with the ALJ's characterization of and use made of his

testimony.

The ALJ's finding that "it is particularly noteworthy

[in reaching a conclusion of no equivalency to a listed level

impairment] that the impartial medical experts, Dr. Askin and

Dr. Galdieri, testified that in their professional opinions

that claimant did not have any impairments, or combination of

impairments, of listing level severity on or prior to December

31, 1989" is not based upon evidence that is presented in the

record.[4]

The ALJ gave little weight here to subjective symptoms,

yet did not say that the objective medical signs and findings

could not reasonably have been expected to result in the pain

stated.  There is no significant consideration of the

plaintiff's condition as a function of pain and depression,

---

4.  The transcript is incomplete.  These witnesses may have stated such
categorical opinions.  The transcript may be the culprit.  But it seems
unlikely, in the light of the much more measured and nuanced testimony that is
transcribed.

apart from consideration of the listed impairments, prior to the end of 1989.  The absence of a listed impairment within the period of coverage does not end the five step process.  How the ALJ decided that Ms. Jacobe in the period of time from 1987 to 1989 was the person in the second hypothetical, in a phase of the analysis where the burden was upon the Commissioner, is not evident in this Decision or in this record.

The other, related, argument of the plaintiff here goes to the rejection of the plaintiff's credibility.  The ALJ has stated in his findings of fact that "[t]he claimant's testimony with regard to her symptoms and limited capacity as of the alleged onset date of disability was overstated, not fully credible, and inconsistent with the weight of the documentary medical evidence." Tr. 382.

The plaintiff's claim is based upon subjective symptoms of pain and depression.  The plaintiff testified and was subject to examination by the ALJ.  The ALJ had the opportunity to develop any area of testimony that he may have wished to develop, and to impeach the claimant if he chose to do so.  On

17

the face of the plaintiff's testimony, it appears that she
responded directly to the questions asked of her.  A
declaration that she is not credible, when her claim depended
upon her reporting of her symptoms, has been applied to defeat
her claim.  But in a case where an adverse credibility
determination is the basis for denying the claim, the
explanatory burden placed upon the Commissioner under *Cotter v.
Harris* requires if the court is to make a reasoningly based
determination whether the ALJ's Decision is based upon
substantial evidence that the non-credible testimonial
assertion(s) be identified and that the reason for finding the
assertion(s) not to be credible be stated.[5]  A finding that the
claimant is not credible, if it is merely a statement that the
subjective symptoms could not be caused by the objectively
known conditions, requires an explanation for that finding.
Even though it would be quite difficult in many cases to prove
by substantial evidence that a person whose reported pain is
reasonably related to a known medical condition does not
actually have the reported pain or can work despite pain, a

---

5.  *See also Wier v. Heckler*, 734 F.2d 955 (3d Cir. 1984).

18

reasonable explanation of the Decision calls at a minimum for
an identification of the express or implicit testimonial
assertion(s) of the claimant that is not credible.  A claimant
need not prove a direct cause-and-effect relationship between a
physical impairment and the claimant's pain.  *Baegra v.
Richardson*, 500 F.2d 309 (3d Cir. 1974), cert. denied, 420 U.S.
931 "...[W]hile there must be objective evidence of some
condition that could reasonably produce pain, there need not be
objective evidence of the pain itself."  *Green v. Schweiker*,
749 F.2d 1066 (3d Cir. 1984).  Subjective complaints of pain
must be given serious consideration.  *Smith, supra,* 637 F.2d at
972.

The adverse determination of the plaintiff's
credibility and the use of that adverse credibility
determination as a material factor to deny the plaintiff's
claim is not supported by substantial evidence.

In the light of a materially inadequate hearing
transcript, the apparent misconstruction and misapplication of
the testimony of Doctors Askin and Galdieri as it relates to

19

the issue of the existence of a disability prior to 1990, and
the inadequate explanation for an adverse outcome determinative
credibility finding, a remand of this case is necessary even
given the age of the case and its multiple considerations by
the Commissioner.[6]

Therefore, it is recommended that this case be remanded
to the Commissioner for further consideration of whether the
plaintiff had become disabled prior to the end of 1989.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:

---

6.  The case had not previously been considered on the merits by the court.