IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELE R. JACOBE, | : | No. 4:06-CV-577 |
| | : | |
| Plaintiff, | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Smyser) |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

### July 13, 2007

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On March 7, 2007, Magistrate Judge J. Andrew Smyser ("Magistrate Judge Smyser" or "the Magistrate Judge") filed a Report and Recommendation ("Report") reviewing the appeal of the Commissioner's decision to deny Plaintiff Michele R. Jacobe's ("Plaintiff" or "Claimant") claim for Social Security Disability Insurance Benefits ("DIB").  (Rec. Doc. 14).  Magistrate Judge Smyser recommended that the case be remanded to the Commissioner.

On March 26, 2007, the Commissioner filed Objections to the Magistrate

---

[1] Michael J. Astrue became the Acting Commissioner of Social Security, effective February 12, 2007 to succeed Linda S. McMahon.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

Judge's Report. (Rec. Doc. 15). On April 2, 2007, Plaintiff filed a brief opposing the Commissioner's Objections. (Rec. Doc. 16). Thus, this matter is now ripe for our review.

**PROCEDURAL HISTORY:**

Plaintiff filed an application for DIB on July 30, 1996. She claimed that she became disabled on September 2, 1987,[2] as the result of lumbar radicular pain, history of lumbar laminectomy and fusion, depression, post-traumatic stress disorder, anxiety, and irritable bowel syndrome. Her claim was denied initially and on reconsideration. Plaintiff then requested and was granted a hearing before an administrative law judge ("ALJ") on February 10, 1998; on June 2, 1998, the ALJ issued a decision denying her claim. Upon remand of this denial by the Appeals Council, a second hearing was held on July 12, 2000, and on September 23, 2000, a second decision denying the claim issued. Following an appeal to this Court, the case was remanded to the Commissioner at the parties' request and a third hearing was held on February 19, 2003. At said hearing, Plaintiff, two (2) medical experts, and a vocational expert testified. On March 14, 2003, the ALJ issued a decision denying Plaintiff benefits.

---

[2] Plaintiff explains the delay in her application for DIB by noting that until her second husband died in 1996, she felt financial assistance unnecessary.

Plaintiff subsequently requested review of the ALJ's March 14, 2003 decision by the Appeals Council, which was denied on January 19, 2006, making the ALJ's decision the final decision of the Commissioner.

The ALJ's March 14, 2003 decision is the subject of the instant appeal. Plaintiff filed her Complaint with this Court on March 20, 2006, contending that "the Commissioner's actions herein were not substantially justified" and seeking reversal of the ALJ's decision.  (See Rec. Doc. 1 at 3).

**STANDARDS OF REVIEW**:

### A. Review of Magistrate Judge's Report

When objections are filed to a report of a magistrate judge, we make a de novo determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. § 636(b)(1); Local Rule 72.3l.  Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge.  See id.  Indeed, in providing for a de novo review determination rather than a de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark,

749 F.2d 5, 7 (3d Cir. 1984).

> B. **Review of the Denial of Disability Benefits**

When reviewing the denial of disability benefits, the Court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

### C. Eligibility Evaluation Process

A five-step evaluation process is used to determine if a claimant is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a claimant is not disabled at any point in the five-step sequential process, the review does not proceed. 20 C.F.R. § 404.1520.

Step one requires a claimant to establish that he has not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Step two is an evaluation of whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). At step three, the Commissioner must then determine whether the claimant's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.1520(d).

If the Commissioner determines that the claimant's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the claimant has established that he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f). The claimant bears the burden of demonstrating an inability to return to his past

relevant work. Plummer, 186 F.3d at 428. If the claimant is able to demonstrate this, then the burden of proceeding shifts to the Commissioner, at step five, to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). The Commissioner is also to consider the claimant's stated vocational factors.

**FACTUAL BACKGROUND**:

 Plaintiff's Testimony regarding Work History and Medical Problems

 Plaintiff was thirty-four (34) years of age on December 31, 1989, the date on which her eligibility status expired. (Rec. Doc. 14 at 7 n.2). On same date, Plaintiff was not employed because she had stopped working approximately five (5) years earlier, in 1984, as she and her second husband were financially secure and she wanted to care for her two (2) step-children when they stayed with their father and Plaintiff. (TR. 398-99).

 However, Plaintiff contends that on September 2, 1987, a combination of impairments rendered her disabled. Most notably, Plaintiff testified that: 1) she has suffered significant back problems, resulting in major back surgeries in 1980, 1987, and 1990; and 2) although she began taking Zoloft in 1998, following the

death of her second husband in 1996, she has suffered depression throughout her life.

With respect to her back problems, Plaintiff testified that she has had constant pain over the years, going back to her first disc fusion surgery in 1980. Plaintiff also explained that in 1987, she had a second disc fusion surgery following a fall in a ShopRite store that caused further injury to her back. Apparently the second surgery was not successful, however, as Plaintiff described experiencing terrible pain, including during the performance of minor chores, thereafter. In fact, Plaintiff testified that she stopped driving a car for five (5) or six (6) years. Further, she testified that she could not stand, sit, or walk during the course of an eight (8) hour day.

In 1990, Plaintiff had a third surgical procedure on her back, which also appears to have been unsuccessful, as she continues to receive treatment for her back.³ Currently, Plaintiff sits a lot, engages in any activity only briefly, and

---

³ We recognize the Commissioner's objection to the Magistrate Judge's conclusion that "[t]he Commissioner does not appear to dispute that the plaintiff who testified at the hearings held to consider this claim is presently disabled, although that issue is not directly addressed." (Rec. Doc. 15 at 1-2 (quoting Rec. Doc. 14 at 12)). In fact, we agree with the Commissioner's assertion that the only issue before us is that which was before the ALJ: Was Plaintiff disabled prior to December 31, 1989?                                             (continued...)
    However, as the Magistrate Judge apparently concluded, we find the inclusion of information regarding events after December 31, 1989 to be helpful, and, thus, we briefly outline such events here. We so conclude because, primarily, such information serves to provide context as to the circumstances which led to the filing of the instant action. Additionally, we find that although Plaintiff's 1990 surgery occurred after her eligibility expiration date, it could serve to

leaves the house only for doctor's appointments. She indicates that her condition has not gotten better over the years, and that she continues to believe that she could not sit and concentrate to perform any sort of job. Her current, daily medications for pain include morphine, oxycontin, celebrex, and muscle relaxers.

As to Plaintiff's depression, the record is less comprehensive. In fact, Plaintiff concedes that she did not seek treatment for psychological issues prior to 1990. Rather, in 1998, following her second husband's death in 1996, Plaintiff began taking Zoloft. However, Plaintiff testified that she has been depressed throughout her life, dating back to childhood.

Medical Testimony

Two medical experts, both non-treating physicians, testified during Plaintiff's hearing before the ALJ. First, Dr. Askin, a board-certified orthopedic surgeon, testified regarding Plaintiff's back issues. Second, Dr. Galdieri, a psychologist, testified about Plaintiff's mental health.

Dr. Askin testified that Plaintiff's 1980 and 1987 back surgeries did not yield impinged nerves as a prominent aspect of Plaintiff's presentation. However, he also indicated that a 1990 MRI revealed some nerve abnormalities in her back,

---

bolster Plaintiff's claims that her pain following the second surgery lasted longer and was more extensive than that which Dr. Askin said her recuperation should have entailed.

specifically damage to a nerve root exiting L-5, S-1, which could explain her ongoing back pain, but not necessarily her leg pain. (TR. 406).

Further, Dr. Askin concluded that Plaintiff's condition did not meet or equal the criteria of a listed impairment, and that she should have been incapacitated or in post-surgical recuperation for only six (6) months to one (1) year following her 1987 surgery. (TR. 401). After said recuperation period, Dr. Askin felt that her condition was such that working at a light or medium exertion level would not have harmed her, but noted that her pain may have prevented her from working. (TR. 402-03).

Dr. Galdieri testified that there is no record of mental health treatment of Plaintiff prior to December 31, 1989, and thus stated that "[t]here's nothing in the record that I would feel comfortable rendering an opinion on" whether or not her mental health met or equaled the criteria for a listed impairment prior to said date. (TR. 424). However, Dr. Galdieri also acknowledged that Plaintiff had produced record evidence, in the form of a report from a pain management doctor who had treated Plaintiff, which linked Plaintiff's depression to her September 2, 1987 injury and the failed 1987 disc fusion surgery. (TR. 427-29).

Vocational Expert Testimony

G. Starosta, a vocational expert ("VE"), testified that if a person, thirty-four

years old, had the residual functional capacity to perform light work; to understand, remember, and carry out instructions; to make simple work-related decisions; and to relate appropriately to co-workers, supervisors, the public, the work setting, and typical changes in the work setting; then the hypothetical claimant could perform many unskilled jobs involving simple repetitive work activity. (TR. 445-47). In fact, the VE testified that even if the physical exertion capabilities were significantly reduced, the standing and sitting flexibility were increased, and the standing or walking abilities were reduced, the hypothetical claimant could still perform some jobs. (TR. 447-48). However, the VE also testified that a hypothetical claimant who met the description of Plaintiff, as Plaintiff described herself, could not perform any jobs. (TR. 448-49).

ALJ's Determination

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged September 2, 1987 onset date, and that she was not able to perform her past relevant work. However, the ALJ also found that although Plaintiff has severe impairments ("dysthymia and episodes of major depression, low back pain syndrome and status post laminectomy in 1980 with fusion for spondylolisthesis, and a partial L4 laminectomy with medial facetectomy for nerve root decompression and bilateral L4-5 bone bank lateral fusion on October 6,

1987") (TR. 382), said impairments do not meet or equal any listed impairments. This finding was based, in part, on the ALJ's finding that "[Plaintiff's] testimony with regard to her symptoms and limited capacity as of the alleged onset date of disability was overstated, not fully credible, and inconsistent with the weight of the documentary medical evidence." (TR. 382). Further, the ALJ determined that Plaintiff's medical impairments did not prevent her from performing a variety of entry-level, unskilled jobs.

Based upon all of the above findings, the ALJ found the Plaintiff not to be disabled before the December 31, 1989 expiration of her insured eligibility.

**DISCUSSION:**

In this appeal, Plaintiff has contended that: 1) substantial evidence does not support the ALJ's finding that Plaintiff's combination of impairments in 1989 did not meet or equal any listed impairments; and 2) substantial evidence does not support the ALJ's finding that Plaintiff was not disabled prior to her December 31, 1989 eligibility expiration date because that finding is based the ALJ's unsupported rejection of Plaintiff's credibility. (Rec. Doc. 14 at 12-13).

Magistrate Judge Smyser reviewed Plaintiff's contentions that the ALJ erred and concluded that the ALJ had, in fact, erred. The Commissioner objects to the Magistrate Judge's Report, arguing that the ALJ did not err in rendering his

11

decision to deny Plaintiff benefits. We shall discuss the merits of Defendant's Objections.

> **1. Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff's Impairments Do Not Meet or Equal Listed Impairments**

The Commissioner objects to those portions of the Magistrate Judge's Report that draw inferences based upon Dr. Askin and Dr. Galdieri's testimony. (Rec. Doc. 15 at 2-6). Essentially, the Commissioner argues that, with respect to both doctors' testimony, "the Report and Recommendation inaccurately concluded that" (id. at 6) the doctors did "not provide a basis in [their] testimony for a finding that [Plaintiff] did not have" (doc. 14 at 14) a listing level impairment prior to the end of 1989.

Our review of the Report and the record leads us to disagree.[4] Rather, as the Magistrate Judge found, we find a lack of substantial evidence to support the ALJ's determination that Plaintiff's impairments do not meet or equal listed impairments. Indeed, contrary to the Commissioner's contention that "[t]here is no testimony that she had not recuperated [from the 1987 back surgery] by the date her insured status expired" (doc. 15 at 6), Plaintiff testified that she has had constant back pain

---

[4] We note, as the Magistrate Judge did, that the incomplete hearing transcript has impaired our ability to review an accurate record and has also rendered us more inclined to remand this matter for further proceedings. We hope that the transcript of the next proceeding will afford a better means by which to conduct any review thereof that may be necessary.

over the years, going back to the date of her first back surgery. Moreover, although the issue at hand is whether Plaintiff was disabled prior to December 31, 1989, the fact that she had another back surgery in 1990, the year after her eligibility expired, tends to corroborate her testimony that the 1987 surgery was unsuccessful in eliminating her back problems.

In addition, despite the Commissioner's assertion that "Plaintiff submitted no evidence of mental treatment prior to 1991" (see doc. 15 at 3), Dr. Galdieri acknowledged that Plaintiff had produced medical evidence, in the form of a report from a pain management doctor who had treated Plaintiff, which linked Plaintiff's depression to her September 2, 1987 injury and the failed 1987 disc fusion surgery. (TR. 427-29).

### 2. Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff's Subjective Complaints Were Not Fully Credible

The Commissioner also objects to the Report's alleged "disregard[] [of] the Commissioner's regulations concerning the evaluation of subjective complaints in finding fault with the ALJ's articulation of his credibility finding." (Rec. Doc. 15 at 6-7). In support of said objection, the Commissioner argues that the ALJ complied with said regulations, see 20 C.F.R. § 404.1529, by accepting Plaintiff's testimony to the extent that he instructed the VE to consider: 1) that depression and pain would reduce Plaintiff's ability to concentrate, limiting her to unskilled,

repetitive work (TR. 446); and 2) that her residual functional capacity would be reduced to sedentary work (TR. 388).

We agree with the Commissioner's sound argument that the ALJ considered Plaintiff credible to at least some extent. However, we also agree with Magistrate Judge Smyser's conclusion that to the extent that the ALJ found Plaintiff incredible as to certain issues, e.g. the extent and length of her recuperation following the 1987 surgery and any depression she may have suffered as a result thereof, he failed to adequately explain such findings. See Wier v. Heckler, 734 F.2d 955 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981). Accordingly, we agree with Magistrate Judge Smyser's conclusion that "[t]he adverse determination of [] [P]laintiff's credibility and the use of that adverse credibility determination as a material factor to deny [] [P]laintiff's claim is not supported by substantial evidence." (Rec. Doc. 14 at 19).

## CONCLUSION

For the foregoing reasons, the Commissioner's Objections to the Report and Recommendation of Magistrate Judge Smyser are overruled. We shall adopt the Report in its entirety and remand this matter to the Commissioner for consideration of whether Plaintiff had become disabled prior to the end of 1989.

An appropriate Order shall issue.